RENIKER v. KANSAS CITY, FT. S. & M. RY. CO. et al.

No. 5695. Opinion Filed November 30, 1915.

Rehearing Denied February 29, 1916.

(155 Pac. 255.)

1. **ESTOPPEL—Sufficiency of Evidence—Quieting Title.** Evidence examined, and **held** not sufficient to sustain an allegation of estoppel.

2. **ADVERSE POSSESSION—Acquisition of Title—Notice of Adverse Possession—Sufficiency of Evidence.** In an action to quiet title and possession of real estate, where plaintiff alleges and relies upon adverse possession for more than seven years, and the plaintiff's evidence is uncontradicted that under a claim of title he improved the property at a cost of several thousand dollars, which from the very nature thereof was permanent and lasting, and defendants made no objection, **held:** (a) That the construction of such improvements, possession, and control of the property, under the evidence, were hostile and inconsistent with defendants' claim of ownership and constituted a high class of notice of adverse possession. (b) The test is as to whether the original

entry was exclusive and adverse to defendants, and whether it so continued uninterrupted for a space of more than seven years from its inception to November 16, 1907, the date of the advent of statehood and the expiration of the statute then in force (section 2938, Ind. Ter. Stat.). If so, there was complete constructive ouster, which under the statute was sufficient and conferred a valid fee simple title in the property to the plaintiff. (c) The evidence examined, and **held** to meet the required emergency, and the court erred in entering judgment against the plaintiff.

(Syllabus by Watts, C.)

*Error from District Court, Ottawa County;*
*Preston S. Davis, Judge.*

Action by H. F. Reniker against the Kansas City, Ft. Scott & Memphis Railway Company, a corporation, and others. Judgment for defendants, and plaintiff brings error. Reversed, and new trial granted.

*Vern E. Thompson* and *A. C. Towne,* for plaintiff in error.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for defendants in error.

Opinion by WATTS, C. The plaintiff in error, plaintiff below, sued the defendants in error, defendants below, to quiet his title and possession of certain real estate. The case was tried to the court without the intervention of a jury, and on the 24th day of June, 1913, a decree was entered for plaintiff for want of plea against the Miami Town Company, a corporation, which will hereafter be referred to as the "Miami Company," J. E. Tutten, A. H. Skidmore, trustees, and Franklin M. Smith, and for defendant Kansas City, Ft. Scott & Memphis Railway Company, which will hereafter be referred to as the "Memphis Company," and St. Louis & San Francisco Railroad Company, which will hereafter be referred to as the "Frisco Company," against plaintiff. Motion for new trial was

denied, and plaintiff appeals and assigns numerous errors, which he crystalizes into two propositions, to wit:

"Under the agreement and arrangement made with appellant by the town company, and the railroad company, by which appellant was to receive one lot free from them and buy one lot from them and buy other lots and build this elevator, are not the defendant Railway Company, and their lessee estopped from asserting title to half this alley, on which part of the elevator is built?

"Are the defendants railroad company and their lessee not barred by the statute of limitation from asserting any title to this portion of the vacated alley on which the elevator is built and the adjacent lots thereto purchased by appellant from the town company and railroad company?"

The pleadings are quite lengthy, but substantially the petition charges: A fee-simple title to and possession in plaintiff of a certain strip of land, formerly an alley 20 feet wide running north and south through block No. 70, in the city of Miami, which was vacated by proper resolution of the city authorities August 15, 1897, at which time plaintiff was the owner and in possession of lots 1 to 6, inclusive, abutting the alley on the west, and defendant Memphis Company's right of way abutting the alley on the east, which right of way was held by said company by virtue of a deed from the Miami Company. The deed provided:

"To the full use and benefit and behoof of said Kansas City, Ft. Scott & Memphis Railway Company, so long as said grantee or its successors or assigns shall use or occupy the same for railway purposes."

The petition further alleged that on vacation of the alley, so much thereof as abutted plaintiff's lots, on the theory of accession, reverted and became his property, and

not the Memphis Company's, because it only held an easement, nor had the Miami Company, its trustees or assigns, any interest; that he had open, peaceable, exclusive, undisputed, adverse possession for more than seven years before admission of the state into the Union, during which time he had openly and notoriously claimed possession and ownership thereof in exclusion of defendants, and further charging the Memphis Company had leased its property to the Frisco Company, and the other defendants claimed some interest, praying judgment quieting his title, possession, and enjoining defendants from asserting title and for further equitable relief.

The Memphis Company answered by general denial and by affirmatively alleging and claiming fee-simple title, and its lessee's, the Frisco Company's, right of possession to the east half of the alley by virtue of its being vacated in the year of 1897, and a deed from the Miami Company of date June 6, 1896, to the land abutting the alley on the east in block 70, praying that its title be quieted, etc.

The Frisco Company's answer shows a lease from the Memphis Company, but otherwise is substantially the same as the Memphis Company's.

Plaintiff's reply denies the new matter and charges nonuse of the alley and estoppel by reason of the inducements and representations on the part of the Memphis and Miami Companies in the year 1897, wherein they procured him to buy lots 4 and 5 from said companies and build an elevator on lot 4 and part of lot 5, and particularly for their mutual benefit, on that part of the alley between the lots last mentioned and the Memphis Company's right of way, with the understanding that all would join in an effort to have the alley vacated and if successful same was

to become his property; that in virtue of said improvements and representations and without which he would not have built the elevator and made other valuable improvements, which cost him several thousand dollars, and bought additional lots 1, 2, 3, and 6, of all of which the Memphis and Miami Companies had full knowledge; reasserting adverse possession, and praying as in the original petition.

The plaintiff's evidence is uncontradicted and, briefly, establishes that in 1896 the Miami Company was engaged in the sale of town lots in and booming Miami, and W. C. Lykins, since deceased, was its president and general manager; that it became indebted in the sum of $11,000 to Wallace Pratt, Kansas City, Mo., as agent and attorney in fact for the Memphis Company, evidenced by a mortgage of May 26, 1896, covering a three-eighths interest, among others, in the west half of block 70; that in 1897 Lykins made substantially the representations and for purposes as charged by plaintiff in the pleadings, but it nowhere appears that the representations were made by any one other than Lykins; that the Memphis Company had knowledge thereof, or that Lykins was its agent; that, relying on the inducements, plaintiff made purchases as claimed; that the Miami Company executed deeds to plaintiff by and through Lykins, its president, which were sent to Kansas City, Mo., and there executed by Pratt or J. P. Donna, under power of attorney, releasing the property from the mortgage given May 26, 1896. The plaintiff became the owner of the entire west half of block 70, and defendant Memphis Company's right of way abutted the alley on the east. The alley was vacated, and plaintiff built an elevator up to and within a few inches of the right of way, as set out in his reply, fenced the alley with other property, built a cement block factory and waterworks plant on part of the alley,

cultivated the unoccupied portion, and otherwise used it, No objections or complaint were ever made to plaintiff because of his acts. He thought he owned the property, and no one questioned his authority or ownership; but he never gave notice, oral or written, to the city or to th. Memphis Company that he claimed adverse possession, nor did he talk to any representative of the Memphis Company in reference thereto. Lykins procured deeds for him.

Under this state of facts, plaintiff held unquestioned possession and dominion over the property until a short time before the institution of the suit, December 20, 1912, and more than seven years before the admission of the state into the Union.

Defendants Memphis and Frisco Companies' only evidence was to the effect that plaintiff had made a contract to sell the property and had given possession. The contract, however, was placed in escrow, dependent upon a merchantable title.

1. We think the evidence is against plaintiff's contention on the first proposition. Nowhere does it appear that Lykins was the agent of the Memphis Company, nor had it knowledge of the inducements and representations made by Lykins, president of the Miami Company. While we surmise that the mortgage of $11,000 was given as a bonus to procure the railroad company to run to the town, the interests of the Memphis and the Miami Companies, so far as the sale to the plaintiff was concerned, were to an extent similar and of mutual advantage. However, the trial court was not justified in acting on surmise and presumption alone, and in this respect did not err.

2. But the second proposition presents merit. As we get from the record and briefs, the defendants rely upon

plaintiff's failure to give special notice of his claim of adverse possession and title, that is, other than would be imputed by the improvements, use, and possession as herein pointed out, and, while the record does not so state, we assume that the learned trial judge took the same view of the law. But, if so, we think the position erroneous. The evidence is that the plaintiff built on the alley the elevator which extended to within a few inches of the right of way, a cement block factory, waterworks plant, and fenced, cultivated, and otherwise used and controlled the entire alley space, at all times believing he had title thereto. The improvements cost several thousand dollars. Some from their very nature are permanent and lasting, and defendants made no objection. The construction of valuable and lasting improvements, possession, and control, in cases of this kind, were hostile and inconsistent with defendants' claim of ownership, and constitute a high class of notice, of which defendants cannot deny full knowledge.

Bearing upon this point, in *Dikeman v. Parrish*, 6 Pa. 220, 47 Am. Dec. 455, the court said:

"He, and those claiming under him, have at all times exercised the highest acts of dominion over the property, by leasing, devising, and conveying it; by extensively improving it, and by receiving the issues and profits. Nor is there a scintilla of proof that for a moment, during the lapse of 21 years, which ran between the inception of their title and the impetration of this suit, they faltered in their claim of absolute and exclusive ownership, or that Parrish and those deriving title from him, at any time during that period, brought the asserted ownership into question. It is almost impossible to believe he was ignorant of the pretensions of the actual occupants; but whether he had notice of them or not is of no consequence, so far as the question of adverse possession is involved. The character

of adverse possession, says Mr. Justice Sergeant, is given, not by proving notice to persons interested, but by the nature of the acts done by the party. To constitute disseisin, it was never held to be requisite that notice should be sent to the disseisee, or that it must be proved he had knowledge of the entry and ouster committed on his land. *Lodge v. Patterson,* 3 Watts, 77, 27 Am. Dec. 335."

We think the test is as to whether the original entry was exclusive and adverse to the Memphis Company, and whether it so continued uninterruptedly for a space of more than seven years from its inception to November 16, 1907, the date of the advent of statehood and the expiration of the statute then in force (section 2938, Ind. Ter. Stat.). If so, there was complete constructive ouster, which under the statute was sufficient and conferred a valid, fee-simple title in and to the alley to the plaintiff, under which conditions it was error to give defendant railway companies judgment.

We have examined the numerous and instructive authorities cited by the defendants, none of which are in conflict with our views herein. In most of the cases cited there was an entire want of some essential element, which does not exist in the case at bar. We think the instant case meets the conditions laid down in *Flesher v. Callahan et al.,* 32 Okla. 283, 122 Pac. 489:

"A possession, to be adverse, must be open, visible, continuous, and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants"

See, also, *Sharon v. Tucker,* 144 U. S. 533, 12 Sup. Ct. 720, 36 L. Ed. 532.

We must hold that the evidence met the required emergency and the court erred in entering judgment against plaintiff. Therefore, for the reasons mentioned, we recommend that the judgment of the trial court be reversed, and new trial granted.

By the Court: It is so ordered.