Maurice SEIGLE et al., Plaintiffs in Error,

v.

Maude S. RICHARDSON, Defendant in Error.

No. 37102.

Supreme Court of Oklahoma.

March 12, 1957.

Dissenting Opinion July 9, 1957.

Rehearing Denied July 9, 1957.

Application for Leave to File Second Petition for Rehearing Denied Nov. 19, 1957.

C. C. Wilkins, Marietta, for plaintiffs in error.

Earl Q. Gray, Ardmore, for defendant in error.

JACKSON, Justice.

This action was instituted by Maude S. Richardson against Maurice Seigle, et al., in the District Court of Love County, Oklahoma, to quiet title to the SE¼ of the NE¼ of Section 11, Township 6 South, Range 3 West, in Love County, Oklahoma.

From the judgment in favor of the plaintiff, defendants appeal.

The parties will generally be referred to as plaintiff and defendant in conformity with their appearance in the trial court.

The record discloses that plaintiff acquired title to the land on the 12th day of May, 1928. This tract of land was not improved, except being fenced and used as pasture land. After the year 1931, no taxes were paid by plaintiff on the land. On August 7, 1945, the defendant, Otis Garrett, obtained a treasurer's tax deed to the land, which was duly recorded on the same day. On the 28th day of February, 1947, Maurice Seigle, the subsequent holder of the tax title, obtained a judgment in the District Court of Love County, Oklahoma in Cause No. 6062 against Maude S. Richardson, et al., quieting title to the land here involved.

Plaintiff alleged in her petition filed on March 29, 1950, that the defendants obtained the tax deed and the judgment in No. 6062 by fraud; that the residence and address of the plaintiff within the State of Oklahoma was disclosed by the public records of Love County in connection with the title to said land, and that defendants, in their proceedings to obtain the treasurer's deed and the judgment in Cause No. 6062, refrained from examining the record to obtain information with reference to the residence and address of the plaintiff.

Plaintiff further alleged that the judgment in Cause No. 6062 is void upon its face, for the reason that the affidavit for service by publication does not conform to the requirements of the statute and, therefore, the judgment rendered is void.

By answer defendants pleaded the validity of the treasurer's deed and the judgment quieting their title to the land and pleaded that the plaintiff's action is barred by the statute of limitations under Tit. 12 O.S.1951 § 95(3) and Tit. 12 O.S.1951 §§ 176, 1031 and 1038.

Plaintiff contends upon the appeal that the judgment in Cause No. 6062 is void upon its face, for the reason that the name of the plaintiff, Seigle, appears in the body of the affidavit as the affiant, and that the affidavit is signed by C. C. Wilkins without designating him as attorney for the plaintiff.

The affidavit for service by publication, so far as here pertinent, reads as follows:

"Maurice Seigle, being duly sworn upon oath, deposes and says:

"That he is the Plaintiff in the above styled and numbered cause of action * * *.

"Affiant further states that the purpose of this cause of action and the relief demanded * * * is to exclude said Defendants, and each of them, from any and all right, title, interest, lien or claim, * * * (describing land) * * * and to quiet and confirm Plaintiff's title and possession to said real estate against said Defendants, and each of them, under and by virtue of the deeds alleged and referred to in said Petition by the Plaintiff."

The remainder of the affidavit alleges that:

" * * * Plaintiff, with due diligence, is unable to make service of summons within the State of Oklahoma, upon said Defendants, or either of them, and the plaintiff does not know and with due diligence is unable to ascertain whether said Defendants named in the alternative are living, or dead, or the whereabouts of any of said Defendants, * * * and plaintiff desired publication service upon such unknown parties, * * *.

"Affiant further states that the residences or place of business of said Defendants, or either of them, are unknown to the plaintiff, and cannot be ascertained by any means within the control of the Plaintiff, and this is one of the classes of cases prescribed by the Statute of Oklahoma, in which service by publication may be had, and the plaintiff wishes to obtain service by publication upon said Defendants, and each of them.

"/s/ C. C. Wilkins

"Subscribed and sworn to before me this the 16th day of December, 1946.

"/s/ J. G. Wilkins
Notary Public

"(SEAL)
My Commission Expires:
May 9th, 1947."

■ To determine whether the affidavit for publication is sufficient to authorize service by publication on Maude S. Richardson, we must examine the entire judgment roll in Case No. 6062. The petition in Case No. 6062 does not appear in the record before us. However, the affidavit of mailing in Case No. 6062 recites that: "C. C. Wilkins, being duly sworn upon oath deposes and says: That he is the attorney for the Plaintiff * * *" and the affidavit is signed "C. C. Wilkins."

The notice by publication in that case bears the signature of C. C. Wilkins, as attorney for the plaintiff. The journal entry of judgment therein recites that the plaintiff, Maurice Seigle, appeared by his attorney, C. C. Wilkins. The journal entry of judgment further recites that:

" * * * all the other above named defendants, and each of them (including Maude S. Richardson) had been duly and legally served by publication as provided by law, and that the plaintiff made and filed proper affidavits for publication service, and the notice was published in local newspapers of general circulation in Love County, Oklahoma and proof thereof made and filed herein, which is hereby approved by the court * * * and from all of the testimony produced herein the court finds that all of the defendants have been duly and legally served, as re-

quired by law, and the court has jurisdiction of all the defendants."

From the foregoing we conclude that the trial court in Cause No. 6062 properly approved the affidavit for publication, for under the statute, Tit. 12 O.S.1951 § 171, as construed in Tolbert v. State Bank of Paden, 30 Okl. 403, 121 P. 212, C. C. Wilkins, as the attorney for the plaintiff in said cause, could make the affidavit. The judgment roll and the proof identifies C. C. Wilkins, the affiant, as the plaintiff's attorney.

We cannot agree with plaintiff that the judgment in Cause No. 6062 is void on its face under our former decision in Faulkner v. Kirkes, Okl., 276 P.2d 264. In the Faulkner case the affidavit was made by the attorney for the plaintiff and it recited that he (the attorney) did not know and with due diligence could not ascertain the residence of the named defendant. It was pointed out that under Tit. 12 O.S.1951 § 171, the affidavit must state that the plaintiff does not know and with due diligence is unable to ascertain the residence of the defendant.

In the affidavit for publication in No. 6062, the affiant, plaintiff's attorney, states that the plaintiff with due diligence is unable to make service of summons within the State of Oklahoma, and that the plaintiff does not know and with due diligence is unable to ascertain whether the defendants are living, or dead, or their whereabouts.

We therefore hold that the trial court in Cause No. 6062 properly held the service by publication made upon Maude Richardson was valid, and that the judgment of the trial court in the present action holding said service void is erroneous.

■ Where a judgment has been rendered on service by publication and the judgment is valid on the face of the judgment roll, an action to set aside such judgment must be brought within three years after its rendition else the action is barred by limitations. 12 O.S.1951 §§ 176, 1031

and 1038. Vinson v. Oklahoma City, 179 Okl. 590, 66 P.2d 933.

However, plaintiff alleged in her petition, and contends here, that the plaintiff in Cause No. 6062 did not use diligence to ascertain whether the defendants herein, Maude Richardson, et al., were non-residents of the state; that no copy of the notice and petition to quiet title was mailed to her; and that the plaintiff's therein (defendants here) could have by reasonable inquiry obtained information as to her residence.

■ We find it unnecessary to detail at length plaintiff's allegations and proof of extrinsic fraud in the procurement of the judgment in view of our conclusion that plaintiff's cause of action is barred under 12 O.S.1951 § 95(3).

Under 12 O.S.1951 § 95(3), an action for relief on the ground of fraud must be brought within two years, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud.

Plaintiff's testimony is to the effect that she did not discover the alleged fraudulent judgment in Cause No. 6062 until March, 1950, and brought this action immediately thereafter. However, the proof shows conclusively that she paid no taxes on this land after the year 1931. Her proof further shows that on December 12, 1944, her husband, acting as her agent, wrote a letter to Otis Garrett, one of the defendants, stating that "We hold the fee title to SE NE 11–6S–3W, Love Co., Oklahoma, and we note you hold tax certificate upon the land * * *." He requested information about redeeming said certificates. The record does not disclose whether Mr. Richardson received a reply to that letter.

As we have indicated, the treasurer's deed was issued and recorded on August 7, 1945, and plaintiff took no further action until she brought the present suit in March, 1950.

It is thus seen that for a period of nineteen years plaintiff paid no taxes upon this land, and although she became aware of

the outstanding tax certificates in the hands of the defendant, Otis Garrett, she took no action to protect the property by payment of the delinquent taxes. These facts establish that during this entire period plaintiff knew or was charged with knowledge that the title to her land would be lost unless she took affirmative action to protect it against the outstanding tax certificates.

The phrase "Until the discovery of the fraud," does not necessarily mean until the party has actual notice of the fraud alleged. Fraud is deemed to be discovered, within the statute of limitation, when in the exercise of reasonable diligence it could have been discovered. Yoder v. Weston, 122 Okl. 51, 250 P. 522. Constructive notice from public records required by law to be kept has been held to be sufficient notice. Caraway v. Overholser, 182 Okl. 357, 77 P.2d 688; McElhany v. Langston, 105 Okl. 209, 232 P. 439.

We therefore conclude that the plaintiff in the exercise of reasonable diligence could have discovered the alleged fraud, and that under this record her cause of action is barred by the statute of limitations.

The case is reversed, with instructions to enter judgment in favor of the defendants.

WELCH, C. J., and DAVISON, HALLEY, JOHNSON, BLACKBIRD and CARLILE, JJ., concur.

WILLIAMS, J., dissents.

WILLIAMS, Justice (dissenting).

The majority opinion after setting out the major part of the affidavit or alleged affidavit for publication in case No. 6062, holds such alleged affidavit to be sufficient and valid and further holds that the judgment of the trial court in the instant case holding such service by publication to be void, is erroneous. Such holding is made in the face of the fact that such alleged affidavit, as set out in such opinion, shows on the face of it that it is not the affidavit of any-

one. Such alleged affidavit commences as follows:

"Maurice Seigle, being duly sworn upon oath, deposes and says:"

Such alleged affidavit is not signed by Maurice Seigle, however, the only signature appearing at the end thereof being that of "C. C. Wilkins". The majority opinion states that because it has been learned from other sources that C. C. Wilkins was the attorney for the plaintiff in that case that the above instrument is thereby converted into a good and valid affidavit for publication. If such instrument be an affidavit, whose affidavit is it? The majority opinion does not say, and I am of the opinion that it is not an affidavit at all.

Even more important, however, is a fact of which the majority opinion takes no cognizance whatsoever. The alleged affidavit for publication is composed almost entirely of false allegations, admittedly known to be false by the party signing the same at the time thereof. In addition, a portion of such admittedly false allegations were repeated in the affidavit of mailing filed in said cause No. 6062. I cannot agree that a valid and binding service of process may be obtained in any such manner. The majority opinion states that plaintiff alleged in her petition and contends here "that the plaintiff in Cause No. 6062 did not use diligence". This is as much recognition as the opinion gives to the complete and brazen fraud which is uncontradicted in the record and was specifically found by the trial court. In rendering judgment in the instant case, the trial court, on its own motion, and initiative, made and entered detailed findings of fact and conclusions of law. The findings of fact and conclusions of law are in pertinent part as follows:

"The defendants in this case claim title by virtue of a purported tax deed and a judgment quieting title thereon. The court finds that Otis Garrett and his son, R. W. Garrett, together with Maurice Seigle, have for several years used the same offices in Oklahoma City, Oklahoma, and have been engaged in

acquiring tax titles in the various counties of Oklahoma; that the treasurer's deed relied upon was acquired in the name of Otis Garrett on the 7th day of August, 1945, and was based upon a notice of application for tax deed and upon an affidavit to obtain service by publication, and an affidavit in lieu of mailing a copy of notice by publication for tax deed, none of which was served upon the occupant of the land in question. Notice was not given to well known local individuals, and though the affidavit to obtain service by publication was made by Otis Garrett, who lives in Oklahoma City, he swore that he did not know R. A. Hefner, one time Mayor of Oklahoma City.

"The Court further finds that Maude S. Richardson, the plaintiff herein, received no notice of application for tax deed, though she has resided in the same town, Muldrow, Oklahoma, for twenty-two years; that she and her husband, M. J. Richardson, are well known to all the abstractors, lawyers and real estate dealers across Southern Oklahoma; that her name and address could have easily been found by checking the reception records of Love County, Oklahoma.

"And the court further finds that the defendant, Otis Garrett, conveyed the above described land by quit-claim deed to Maurice Seigle, and thereafter in Cause # 6062 in the district court of this county, Maurice Seigle, another of the defendants, brought a suit to quiet title against the plaintiff herein, together with others; that the affidavit for publication service in cause '# 6062 was introduced in evidence in this case, showing that Maurice Seigle made said affidavit for publication and service, but that said affidavit was signed by C. C. Wilkins, attorney for the defendant herein.

"The court further finds that the affidavit to obtain service by publication made the statement, under oath, that many well known local individuals, known both to the defendants herein and their attorney, were included in the affidavit, and the statement was made that the plaintiff was unable to ascertain whether they were living or dead, and was unable to ascertain their whereabouts so that notice of the service by publication could be made upon them; that included among those well-known individuals were L. S. Dolman and Ezra Dyer, attorneys at law of Ardmore, Oklahoma, R. L. Bowman, E. J. Hendon, and George R. Fish, all well known real estate dealers and lease brokers in Ardmore, Oklahoma.

"And the court further finds that said affidavit and the affidavit of mailing state that the plaintiff's address is unknown, though her name and that of her husband, M. J. Richardson, are well known to all real estate dealers, lease brokers, lawyers, and abstractors in Southern Oklahoma; and reception records of Love County, Oklahoma, and her address could have been ascertained for the purpose of giving her notice of the pendency of the suit with very little effort.

"The court further finds that the plaintiff, Maude S. Richardson, had no notice of the pendency of the suit, Cause # 6062, or of the setting of the same for trial and the taking of judgment against her therein, on the 28 day of February, 1947.

"The court further finds that in 1950 the plaintiff discovered the judgment taken in 1947, and brought this suit to set the same aside; that various motions were argued, and pleadings filed from March 29th, the date of the filing of the petition in this suit, and nothing was ever revealed to the court about the fact that on the same day the suit was filed, March 29, 1950, the defendant, Maurice Seigle, had conveyed the record title to the property involved herein to R. W. Garrett, another of the defendants, and that this fact was in no

manner called to the attention of the plaintiff or her attorney by either of the defendants or their attorney until the same was discovered on the 21st day of March, 1952; further, that the original two (2) defendants, Maurice Seigle and Otis Garrett, through their attorney, diligently contested this law suit from March 29, 1950, up to March 21, 1952, and argued motions herein without disclosing to the plaintiff or to the court the fact that neither of said original defendants held record title to the property.

"The court further finds that neither of said original defendants in this action had ever been in possession of the land involved herein up to the time of the filing of the petition in this lawsuit; but that the plaintiff, Maude S. Richardson, had been in possession of said lands for many years through her tenant, E. L. Taylor; that since the pendency of this suit, the said E. L. Taylor sold his land and moved away, and that the attorney for the defendants herein then leased the land involved in this litigation to Charles Starrett, and through said lease claim possession at this time.

\*　　\*　　\*　　\*　　\*　　\*

"The court further finds that the defendants, Otis Garrett, Maurice Seigle, and R. W. Garrett, have, since the acquisition of the certificate tax deed, conspire, schemed, and planned, as shown by their actions and testimony in this case, to commit a fraud upon the true owner of the land involved herein in the following respects:

"1.　That they conspired to obtain a Treasurer's Deed upon their original certificate deed without giving notice to the occupant of the land or to the owner, Maude S. Richardson, the plaintiff herein, though such notice could have been easily given.

"2.　That they further conspired to obtain a judgment quieting title upon the land involved herein, as against the plaintiff, without proper notice to her or to her tenant. And,

"3.　They have conspired against the plaintiff herein by withholding from the court for nearly two (2) years the holder of the purported record title to the land herein, though at all times through their attorney, appeared before this court and contested the lawsuit as if party in interest were a party.

"Conclusions of Law.

"The Court finds as a matter of law that the property involved herein belongs to Maude S. Richardson, the plaintiff herein, and that at the time this suit was filed she was in possession of said property; further that she had a right to institute this law suit either as an owner altogether, or as partial owner for herself and a co-tenant.

"And the Court further concludes that the Tax Deed appearing in book 40 of deed record book on page 248 in the office of the County Clerk of Love County, Oklahoma, is void and of no force and effect as against the plaintiff for the reason that the same was obtained by fraud practiced by the defendants, since no effort was made to serve plaintiff with notice of any application for tax deed, though the address and place of business of plaintiff and her tenant could have been easily ascertained by the defendants.

"And the Court concludes further as a matter of law, that purported judgment quieting title in case # 6062 in this court is null and void and was obtained by fraud practiced by the defendants against this plaintiff for the reason that the court never acquired jurisdiction of the plaintiff because of the false affidavits of mailing and affidavits to obtain service by publication upon the plaintiff, when the defendants well knew or could have easily ascertained the address of both the plaintiff and her tenant; further, that as a matter of law, the purported affidavit to obtain service by publication was in

fact no affidavit of any person having been made in the name of Maurice Scigle, one of the defendants herein, and signed by C. C. Wilkins, attorney for the defendant.

"And the Court further concludes as a matter of law, that the purported deeds transferring the property involved herein back and forth between them and each of them are champertous and null and void as against the plaintiff herein.

"For all the foregoing reasons the Court finds generally for the plaintiff herein, that the tax deed and judgment quieting title thereon should be set aside, cancelled, and held for naught; and that the plaintiff be restored to the possession of the land involved herein which she had at the beginning of this lawsuit."

These findings by the trial court were not attacked in the brief of plaintiff in error, and are in effect conceded as being correct. The majority opinion does not even take cognizance of such findings. After ignoring the trial court's uncontroverted findings of fact, the majority opinion simply says that since the plaintiff had paid no taxes for a number of years and took no action to protect the property by payment of these delinquent taxes, that she knew or was charged with knowledge that the title to her land would be lost unless she took affirmative action to protect it against the outstanding tax certificates. This is in effect a holding that the statute requiring service of notice upon the owner and the occupant of land covered by an application for a certificate tax deed before such deed shall issue, and the statutes requiring service of summons upon defendants in civil actions in this state, only apply to persons who have paid their taxes and have no application to those persons who may have, for one reason or another, or for one period of time or another, failed to pay some of such taxes.

I do not understand such to have ever been the law in this jurisdiction or to have ever been intended as the law in this jurisdiction, and I cannot agree with an opinion that so holds.

This majority opinion refers to the fact that on December 12, 1944, plaintiff's husband, acting as her agent, wrote a letter to Otis Garrett, one of the defendants, with reference to redeeming the tax certificate held by Garrett, as evidence that plaintiff knew or should have known that the title to her land would be lost. It should also be borne in mind, however, that such letter is also conclusive proof that Garrett had been given personal knowledge that plaintiff was living and a resident of the State of Oklahoma and her exact post office address, and Garrett's affidavit made less than four months later to obtain service by publication of notice of application for tax deed was not only false in stating that plaintiff was a non-resident of the State of Oklahoma, and not within the State and could not be served within the State of Oklahoma, but such false allegation was willfully and intentionally made. Such letter, therefore, actually supports plaintiff's allegation and the trial court's findings, rather than the majority opinion. Conceding that knowledge that a tax certificate was outstanding against her land was some knowledge of a possible loss of title to plaintiff's land, still can it legally and logically be said that such knowledge was also notice that the certificate holder would deliberately refrain from complying with the statutes relative to notices and summons, and would secure a tax deed, and later a judgment quieting title to the land, without ever serving a notice or summons upon either plaintiff or her tenant in possession of the land, and without ever obtaining possession of said land, all in direct contravention of the applicable statutes? The majority opinion answers such question in the affirmative. I do not agree. I therefore respectfully dissent.