BOYD et ux. v. PRUDENTIAL INS. CO. et al.

No. 30038.   June 10, 1941.

*114 P. 2d 467.*

Zink, Cunningham & Cunningham and Clayton Carder, all of Hobart, for plaintiffs in error.

Earl Bohannon, of Parsons, Kan., Tolbert, Tolbert & Gillespie, of Hobart, and J. L. Shuss, of Parsons, Kan., for defendants in error.

HURST, J. Plaintiffs, Charley Boyd and Lillie May Boyd, his wife, brought this action against defendants, the Prudential Insurance Company of America and J. A. Banker, to recover damages for fraudulent representations in connection with the sale of real estate. The trial court sustained a demurrer to plaintiffs' evidence, and plaintiffs appeal.

The sole question involved is whether the alleged fraud was discovered by the plaintiffs more than two years prior to the commencement of the action and the action barred by the two-year statute of limitations found in the third subdivision of section 101, O. S. 1931, 12 O. S. A. § 95, which was pleaded by defendants. Plaintiffs' petition alleged the purchase of 80 acres of land from Prudential, acting through its agent, J. A. Banker. The purchase was consummated in October, 1933. The fraudulent representation complained of was that Banker represented that certain water wells theretofore dug upon the property by the town of Lone Wolf had been abandoned by the town and were included in the conveyance to plaintiffs. The conveyance to plaintiffs contained no covenants of warranty or mention of the wells, and was made subject to taxes and assessments and to "rights of tenants or occupants, if any." It was in effect a quitclaim deed. Plaintiffs at the time of the transaction were occupying the land as tenants and were familiar with the fact that the wells had been dug and had theretofore been used by the town. Charley Boyd testified that just prior to the purchase Banker told him the wells belonged to the property, that the town has just abandoned them, that there was nothing of record showing the town owned them, and that they were worth $1,000 to the place. He further testified that in February, 1935, in a conversation with the water clerk of Lone Wolf, the water clerk advised him that the wells belonged to the town and if he bothered them he would be thrown in jail; that the next Monday after this conversation he attended a meeting of the town officials and was advised by them that the town claimed the wells under a 99-year lease held by it, which lease was not of record; that they agreed, however, that they were not using the water at that time and that it would not hurt anything if he used it; that the question as to whether he should pay anything for such use was further discussed, and he advised them that he considered the wells his and would pay nothing for them; that at said meeting the town officials searched

for and were unable to find their lease; that shortly thereafter he told Banker that the town was trying to make him trouble about the wells, and Banker told him that the wells already belonged to him and he did not have to pay the town anything for them. From his testimony it appears that he made no further inquiry or investigation of the town's claim nor did he make any further effort to ascertain if it had a written lease upon the property. In August, 1938, the town brought an action in which plaintiffs were enjoined from interfering in any way with the exercise of its rights under its lease. At some time prior to the bringing of such action the lease had been found and placed of record. The present action was commenced on April 29, 1939.

Plaintiffs contend that the information received by Boyd from the town officials was not sufficient to constitute knowledge of the falsity of Banker's representation; that there was no constructive notice because the lease was not recorded until shortly before the injunction suit was filed against them by the town and that no diligence on their part would have availed to enable them to discover any fact upon which the statements of the town officials were based. They assert that by the statement of Banker, made subsequent to the meeting between Boyd and the town officials, that plaintiffs owned the wells and did not have to pay the town anything for them, they were lulled into a sense of security, and believing such statement to be true, were induced to make no further investigation as to the claims of the town. In support of this contention they cite Waugh v. Guthrie Gas, Light, Fuel & Improvement Co., 37 Okla. 239, 131 P. 174; Depuy v. Selby, 76 Okla. 307, 185 P. 107; Billingslea v. Whitelock, 112 Okla. 192, 242 P. 722, and other cases of similar import. These cases hold that where a party has knowledge of a claim that may be made against him, which is sufficient to arouse his suspicion and put him on inquiry, the making of further representations by the grantor, or the party asserting the statute of limitations against him, which lull him into a sense of security, and divert him from further inquiry, is sufficient to toll the statute. A reading of these cases, however, discloses fact situations widely different from the facts in the case at bar. Here the plaintiffs knew that the water wells had been dug and used by the town. The specific representation made by Banker was that the use of the wells had been abandoned by the town. When plaintiffs at the meeting of the town board were advised that the town had not abandoned the wells or its right to use water therefrom, plaintiffs were fully advised of the falsity of Banker's representation. The fraud was then fully discovered. There was nothing in the statement thereafter made by Banker which justified them in abandoning further investigation of the town's claim, or which tended to refute such claim. Such statement by Banker was not a statement of any fact or circumstance, nor was it a promise upon which they could rely, but it was a pure conclusion on his part. There was nothing in the deed from Prudential giving plaintiffs title to the wells, or justifying them in disregarding the assertion of the town officials that it had a written lease for 99 years on the land upon which the wells were located and that it had not abandoned them.

This court has repeatedly held that if, upon the trial of an action in which the bar of the statute of limitations is asserted by the defendant, it should develop that the alleged fraud was discovered or could with reasonable diligence have been discovered more than two years prior to the filing of the suit, the action is barred. Bankers' Mortgage Co. v. Leisure, 172 Okla. 170, 42 P. 2d 863; Mansfield, Brunson, Kemp, & Ahrens v. King, 160 Okla. 243, 16 P. 87; Yoder v. Weston, 122 Okla. 51, 250 P. 522. See, also, 37 C. J. 939; 17 R. C. L. 858. The testimony of Boyd plainly discloses that knowledge of the falsity of Banker's statement was brought home to plaintiffs four years before the filing

of the action, and the mere assurance by Banker that the plaintiffs owned the wells, in the face of the town's assertion of its right, does not excuse the failure of plaintiffs to use reasonable diligence to ·assert their claim. The judgment in favor of the town simply judicially confirmed the claim brought home to the plaintiffs by the town officers in February, 1935. See Foy v. Greenwade, 111 Kan. 111, 206 P. 332.

Plaintiffs further contend that the question of when the fraud was discovered was a question of fact and therefore should have been submitted to the jury, but where upon the witness stand plaintiffs admitted the discovery of the fraud in 1935, such admission eliminated any question of fact, and the sustaining of the demurrer to the evidence was proper. Moore v. Washita Valley Bank, 183 Okla. 622, 84 P. 2d 16.

Affirmed.

CORN, V. C. J., and RILEY, GIBSON, and DAVISON, JJ., concur.